UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIR LEE SHOALS,<br><br>         Plaintiff,<br><br>    v.<br><br>HOME DEPOT, INC., et al.,<br><br>         Defendants. | 1:05-cv-01185 OWW SMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PRAYER FOR ATTORNEY'S FEES (DOC. 18), AND DENYING PLAINTIFF'S MOTION FOR TRIAL BY JURY (DOC. 16). |

## I.  INTRODUCTION

This lawsuit concerns an oral home improvement contract allegedly entered into by Plaintiff Sir Lee Schoals and Daniel Rule,[1] a former employee of Defendant Home Depot, Inc. ("Defendant" or "Home Depot").  Before the court for decision are (1) Defendant's motion for partial judgment on the pleadings, in which Home Depot seeks dismissal of Plaintiff's contract claim and requests that Plaintiff's prayer for attorney's fees be stricken (Doc. 18); and (2) Plaintiff's motion for trial by jury (Doc. 16).

---

[1]    Mr. Rule is not named as a defendant in this lawsuit.

1

## II. **BACKGROUND**[2]

Plaintiff, who has been blind since 1986, must exercise on a regular basis for health reasons. (Compl. at ¶8.)  In January 2004, Plaintiff became interested in constructing an addition to his home for use as a home gym. (*Id*.)  Plaintiff has little knowledge of the building industry, so he contacted the city of Corcoran, California, where he resides, to seek advice as to the approximate cost of such an addition. (*Id*. at ¶9.)  He was advised by the City that the project would cost approximately $20,000. (*Id*.)  Plaintiff secured a loan for that amount. (*Id*.)  Plaintiff then contacted several builders, and learned that this cost estimate was very low. (*Id*. at ¶10.)

Soon thereafter, Plaintiff heard a television advertisement by Home Depot indicating that Home Depot "did home improvements." (*Id*.)   Plaintiff called Home Depot and spoke to a young woman, who referred him to another Home Depot employee, Daniel Rule, who worked in the "Pros Department." (*Id*. at 11.)  Rule advised Plaintiff that Rule would have to inspect the construction site before he could determine whether Home Depot could perform the work for him. (*Id*. at 11.)

In early May 2004, Rule met with Plaintiff.  Rule introduced himself as the department manager for Home Depot's Pros Department. (*Id*. at 12.)  Rule advised Plaintiff that the project could be completed for $20,000 and that, as a licensed

---

[2] This background section is based on the facts as alleged in the complaint, which must be assumed true for purposes of this motion. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990).

**2**

electrical contractor,[3] Rule could do the electrical work for Plaintiff at no charge. (*Id*.) Rule further advised Plaintiff that he would open a Home Depot charge card in Plaintiffs name to facilitate the purchase of materials from Home Depot. (*Id*.)

On May 7, 2004, Rule prepared a computer assisted design drawing (CAD) of a floor plan for the addition using a Home Depot computer and software. As planned, the addition was to include a spa room. In May 2004, Plaintiff paid Rule approximately $4,600 for a spa, but never received it.[4] (*Id*. at ¶13.)

At some point, Plaintiff inquired whether there would be a contract for the work that was to be performed. Rule responded that the CAD plans were the contract. (*Id*. at ¶14.)

In June 2004, Rule brought two other persons to the job site. Rule represented that they were licensed contractors, although apparently they were not. These individuals provided Plaintiff with estimates for certain aspects of the work. Plaintiff responded that he could not pay the amount requested because of the sums he already paid to Rule. Rule then advised Plaintiff that Home Depot had a "special financing program for persons with disabilities" and that Rule would arrange for Home Depot to increase Plaintiff's credit limit. (*Id*. at 15.) Plaintiff's credit limit was subsequently increased from $750 to $5,600.

During May and June 2004, Plaintiff requested reimbursement

---

[3] Rule apparently had no contractors license at all.

[4] Plaintiff alleges that the spa was later sold to another Home Depot employee for the remaining balance on the spa of approximately $200. (*Id*. at 13.)

**3**

for approximately $5000 of expenses. Plaintiff complied with this request. Plaintiff also paid the two other "contractors" more than $5000. (*Id.* at 17.)

In June 2004, Plaintiff became suspicious of Rule and called the Corcoran planning office to inquire about permits for the addition. Plaintiff was informed that there were no permits on file. Plaintiff then demanded that all work on the project cease. (*Id.* at ¶17.)

Plaintiff alleges that Rule engaged in this type of conduct in the past and that Home Depot was aware of his previous activities, but did nothing to prevent him from continuing to do so. (*Id.* at ¶18.)

Plaintiff initially filed this lawsuit in the Superior Court for the County of Kings on August 25, 2005. (*See* Doc. 16-2.) The complaint contains three causes of action for (1) promissory fraud; (2) negligent misrepresentation; and (3) breach of contract. Among other prayers for relief, Plaintiff seeks attorneys fees and punitive damages.

On September 16, 2005, Defendant removed the case to this court on the basis of diversity. (Docs. 1 & 2.) On October 14, 2005, counsel for both parties met and conferred pursuant to Federal Rule of Civil Procedure 26(f). At this meeting, counsel for plaintiff informed counsel for defendant that Plaintiff desired a jury trial. Defendant asserted that a jury trial was not available because Plaintiff had not timely demanded one. These positions are reflected in the joint scheduling report filed on December 1, 2005, which provides:

>Shoals contends that he is entitled to a jury. Home Depot contends that Shoals is not entitled to a jury because Shoals did not make a timely demand for one.

(Doc. 10 at 5.). The scheduling order field by the court on January 26, 2006 indicates that "this is a jury trial." (Doc. 14.)

### III. ANALYSIS

#### A. Home Depot's Partial Motion for Judgment on the Pleadings Regarding the Breach of Contract Claim.

##### 1. Standard of Review.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990). Judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id*.

##### 2. Home Depot's Argument that the Contract is Unenforceable for Failure to Satisfy the Statute of Frauds.

Home Depot moves for judgment on Plaintiff's contract cause of action on the ground that the alleged contract between Plaintiff and Rule was not reduced to writing and is therefore unenforceable. Home Depot correctly points out that California

5

Business & Professions Code section 7159 requires covered home improvement projects to be in writing. However, Defendant operates under the mistaken impression that this provision incorporates home improvement contracts into the statute of frauds.

In pertinent part, section 7159 provides:

> (a)(1) This section identifies the projects for which a home improvement contract is required, outlines the contract requirements and lists the items that shall be included in the contract, or may be provided as an attachment.
>
> ***
>
> (3) Failure by the licensee, his or her agent or salesperson, or by a person subject to be licensed under this chapter, to provide the specified information, notices, and disclosures in the contract, or to otherwise fail to comply with any provision of this section, is cause for discipline.
>
> ***
>
> (b) For purposes of this section, "home improvement contract" means an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, if the work is to be performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500)...
>
> ***
>
> (d) A home improvement contract and any changes to the contract, <u>shall be in writing and signed by the parties</u> to the contract prior to the commencement of any work covered by the contract or applicable change order....

Home Depot insists that this provision is the equivalent of applying the statute of frauds to home improvement contracts. In support of this contention, defendant first cites California Civil Code section 1624, which codifies the general statute of frauds and provides that oral contracts subject to it are

6

invalid. This provision, however, fails to demonstrate that home improvement contracts covered by section 7159 are subject to the statute of frauds. Defendant cites no cases in support of this latter proposition, relying instead on a single secondary source: *Ann Taylor Schwing*, 3 California Affirmative Defenses § 53.23. Home Depot represents that this source "recogniz[es] Business and Professions Code § 7159 as an additional statute of frauds." But, the Affirmative Defenses manual does not go this far. The one-page entry at § 53.23 simply states that "[t]here are a wide variety of [] California statutes requiring a written contract if the parties are to make a contract with respect to the particular subject matter addressed in the statute...." The entry lists more than twenty such California statutes, including section 7159, and concludes by stating that "[d]epending on the circumstances of the parties and their relationship, federal law or the law of another state may impose a statute of frauds."[5] Home Depot's reliance on this source in support of its assertion that the statute of frauds applies to the contract in this case indicates carelessness at best and arguably demonstrates inattention to its Rule 11 responsibilities.

Contrary to Home Depot's assertions, contracts for home improvement are <u>not</u> governed by the statute of frauds. *See* Cal. Civ. Code § 1624 (specifically enumerating types of contracts that are subject to the statute of frauds, generally including

---

[5] Plaintiff also cites to 1 Witkin, Summary of California Law, Contracts § 344 et seq. (10th ed. 2005). But this source discusses only the statue of frauds as codified, and does not mention Business and Professions Code section 7159.

**7**

contracts for the sale or transfer of goods or real property or services contracts that cannot be performed within one year). Of the California cases that have construed Business and Professions Code section 7159, <u>none</u> have treated this provision as an equivalent to the statute of frauds.

Nevertheless, section 7159 is a valid regulatory requirement. As a general rule, a contract made in violation of law is voidable. *See Asdourian v. Araj*, 38 Cal. 3d 276, 291 (1985). However, there are many exceptions to this general rule, including a broad exception that <u>allows oral contracts covered by section 7159 to be enforced</u>.[6] *See Id*. For example, in *Asdourian*, the California Supreme Court considered whether oral home improvement contracts between a contractor and an experienced real estate developer should be enforced notwithstanding section 7159's writing requirement. 38 Cal. 3d at 293. The contractor sought enforcement, while the real estate developer, who had not paid for the home improvements, sought a ruling that the contract was void. Acknowledging the general rule that "a contract made in violation of a regulatory statute is void," the *Asdourian* court noted that "the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances." The court placed particular emphasis on the exception that allows illegal contracts to be enforced in order to "avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff." *Id*. In

---

[6] In this way, the general rule that a contract is void for violating public policy is very different from the statute of frauds, which is strictly applied.

**8**

addition, the court reasoned that:

> [T]he extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts.

*Id*. The *Asdourian* court found the contract at issue to be enforceable, reasoning that "the policy of section 7159 is to encourage written contracts for home improvements in order to protect unsophisticated consumers." Because the party seeking to have the contract voided was a sophisticated developer (i.e., not a member of the group "primarily in need of the statute's protection"), he did not deserve the benefit of having the contract voided. Section 7159 is a consumer protection regulation designed to protect unsophisticated consumers seeking home improvements. The statutory scheme is not designed to enable home importers who are or act as contractors to avoid responsibility.

Similarly, the party seeking to have the contract <u>voided</u> here (Home Depot) is <u>not</u> a member of the group "primarily in need of the statute's protection." Rather, Mr. Shoals, who does falls within the ambit of the statute's protective reach, seeks to <u>enforce</u> the contract.

Defendant's efforts to distinguish *Asdourian* as an extraordinary case are unpersuasive. For example, Defendant argues that "there can be no claim of unjust enrichment vis-a-vis Home Depot" because "Shoals gave $10,000 to Rule -- not Home Depot..." But Defendant misses the thrust of the court's reasoning in *Asdourian*. The California Supreme Court acknowledged that the party seeking enforcement was a contractor

**9**

1  and therefore "should have been aware that the contracts were
2  required to be in writing." *Id*. at 294.  Nevertheless, under the
3  circumstances presented, "enforcing the oral agreements [did] not
4  defeat the policy of the statute." *Id*.  Critically, "the penalty
5  which would result from the denial of relief would be
6  disproportionately harsh in relation to the gravity of the
7  violations."  *Id*.

8      Here, the case for enforcement is even stronger than in
9  *Asdourian*.  Here, the party seeking enforcement, Mr. Shoals, is
10 an inexperienced consumer with no reason to be aware that a
11 regulation requires home improvement to be in writing.  As
12 discussed, Plaintiff is exactly the type of individual the
13 statute seeks to protect.  It was Home Depot's responsibility, as
14 a purported home improvement contractor, through its alleged
15 agent, Rule, who should have provided a written contract.  In
16 this case, "enforcing the oral agreements [would] not defeat the
17 policy of the statute...and the penalty which would result from
18 the denial of relief would be disproportionately harsh in
19 relation to the gravity of the violations."  *Id*.

20

21      In sum, the strict writing requirement contained within the
22 statute of frauds does not apply here.  Although California
23 Business and Professions Code section 7159 does require that home
24 improvement contracts be in writing, the alleged contract at
25 issue here should be enforceable if the trier of fact believes a
26 contract was made.

27
28

**10**

### 3. **Home Depot's Argument that the Equal Dignities Rule Bars Enforcement**.

Plaintiff's contract claim appears implicates Home Depot on the ground that its agent, Rule, a manager, had "ostensible authority" to enter into an agreement on behalf of Home Depot. Defendant argues that the so-called "equal dignities rule" bars a claim based upon ostensible authority from proceeding.

Ostensible authority is "such [authority] as a principal, intentionally or by want of ordinary care, [that the principal] causes or allows a third person to believe the agent possesses." Cal. Civ. Code § 2317. Ostensible authority can arise as a result of the principal's conduct which causes the third party to reasonably believe that the agent possesses the authority to act on the principal's behalf. *Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638 (1964). Ostensible authority can be implied from the facts and circumstances of the case. *Id*.

Plaintiff points to a number of facts supporting his assertion that Rule had ostensible authority to bind Home Depot. First, Plaintiff heard a television advertisement that Home Depot performed home improvement projects. When Plaintiff called Home Depot, a Home Depot employee referred him to Mr. Rule in the "Pros Department." Mr. Rule was at that time employed by Home Depot. Rule met with Plaintiff at Plaintiff's home and introduced himself as the "Pros Department manager" at Home Depot. Rule utilized a Home Depot CAD program to draft plans for the room addition. Rule also opened up a Home Depot credit card in Plaintiff's name, and later had Plaintiff's credit limit increased on that card. Home Depot authorized third parties to

**11**

make purchases on the account which were then delivered by Home Depot. Finally, Plaintiff alleges that Home Depot was aware that Rule had engaged in similar conduct in the past, but had done nothing to stop him.

Defendant responds that, even if Plaintiff can establish ostensible authority, enforcement of the contract against Home Depot is nevertheless barred by the equal dignities rule. This is nonsense. The equal dignities rule has been codified at California Civil Code section 2309:

> An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given in writing.

The equal dignities rule is essentially a corollary to the statute of frauds. Where a contract would be void unless reduced to writing (e.g., those contracts subject to the statute of fraud), authority to enter into such a contract must also be in writing. Defendant points to cases applying the equal dignities rule to contracts that are subject to the statute of frauds. For example, in *McGirr v. Gulf Oil Corp*, 41 Cal. App. 3d 246, 252 (1974), plaintiff sued Gulf Oil and one of its employees for breach of an oral contract to lease a service station for five years. This type of lease is a contract subject to the statute of frauds. Cal. Civ. Code § 1624 (applying the statute of frauds' writing requirement to "an agreement that by its terms is not to be performed within a year from the making thereof."). Employing the equal dignities rule, the *McGirr* court reasoned that, for Gulf Oil to be liable under the contract, there must be evidence that the employee had written authority to enter into

**12**

the lease on behalf of Gulf Oil.

As discussed above, the "statute of frauds," codified at California Civil Code section 1624, <u>does not apply to the contract in this case</u>. Although section 7159 technically requires home improvement contracts to be in writing, Defendant offers no authority applying the equal dignities rule outside the confines of the statute of frauds. Moreover, even if the equal dignities rule is applicable to contracts covered by section 7159, it follows logically that the equal dignities rule is subject to the same exceptions applicable to section 7159.

### 4. Plaintiff's Estoppel Arguments.

Plaintiff argues that even if the statute of frauds and/or the equal dignities rule do apply to the contract in question, Home Depot is estopped from asserting either defense because of Rule's conduct. Specifically, Plaintiff alleges that he inquired of Rule whether there would be a contract for the project. Rule responded that the computer assisted design plan for the addition <u>was the contract</u>. This allegation, if true, could justify Plaintiff's reliance that the computer design plan was the "contract."

Home Depot relies again on the equal dignities rule as a defense to this estoppel argument. Under the equal dignities rule, an agent cannot usually estop his principal by conduct alone. *See Monte Carlo Motors v. Volkswagenwerk,* 177 Cal. App. 2d 107, 112 (1960). In *Monte Carlo*, defendant's agent had been entrusted with several copies of a fill-in-the blanks form contract subject to the statute of frauds. These copies were

**13**

1  signed by the principal and the agent was authorized to fill in
2  blanks to finalize contracts with two specific Volkswagen
3  distributors.  The agent, however, <u>did not</u> have authorization,
4  written or otherwise, to enter into a contract with the
5  particular Volkswagen dealership owned by <u>plaintiff</u>.  Apparently,
6  the officers of the plaintiff in this case "had knowledge that
7  the principal had not filled in the blanks before signing the
8  document." *Id*. at 111.  The *Monte Carlo* court applied the equal
9  dignities rule to bar enforcement of the contract:

> Our cases hold that the authority of an agent to fill such blanks must be in writing where the document itself is required to be in writing by the statute of frauds....  The rule logically applies equally to all instruments covered by the statute of frauds in view of the fact that the agent's authority to execute every such instrument is equally required to be in writing. Civ. Code § 2309. It follows that where the third party is on notice that there are blanks in such an instrument which the agent can only fill in if his authority is in writing the mere possession of such incompleted document by the agent could not estop the principal.

*Id*. at 111-12 (internal citations omitted).

     Critically, however, the *Monte Carlo* court suggested that an exception to the equal dignities rule might apply "where the agent fills in the blanks and delivers the completed instrument to the other party <u>without his knowledge that the blanks were not filled when the principal executed it</u>...."  *Id*. (emphasis added). In such a case, the principal might be estopped from asserting the equal dignities rule as a defense.  *Id*.  Therefore, the outcome turns on the subjective understanding of the party raising the estoppel argument.

     Here, plaintiff had every reason to believe that he was contracting with Home Depot.  Neither Home Depot, through its

**14**

agent, nor Rule himself disclosed that Rule might need to have written authorization from Home Depot to enter into a home improvement contract on Home Depot's behalf.  Plaintiff had no independent knowledge of any such requirement.  Under the circumstances, Rule's representation to a blind man that the computer assisted design drawings <u>were the contract</u>, if found true by a trier of fact, is enough to estop Home Depot from asserting the statute of frauds and/or the equal dignities rule as a defense to enforcement of the alleged contract.

Defendant's motion for partial judgment on the pleadings is **DENIED**.

### 5. Attorney's Fees.

Home Depot moves to strike Shoal's prayer for attorney's fees.  In California, a prevailing party is not entitled to attorney's fees unless specifically provided for by contract or by statute.  See Cal. Code Civ. Pro § 1021.  Plaintiff does not make any arguments in opposition to this motion, nor does he point to any statute or contractual provision entitling him to attorney's fees.  Defendant's motion to strike Plaintiff's prayer for attorney's fees is **GRANTED**.

### B. <u>Motion for Jury Trial</u>.

When a case is removed from state court, the non-removing party must make a demand for a jury trial within ten days of

service of the notice of removal.  Fed. R. Civ. Pro. 81.[7]

Here, plaintiff failed to formally move for a jury trial within the ten day window.  On October 14, 2005, during the required Rule 26(f) conference, counsel for plaintiff informed counsel for defendant that Plaintiff desired a jury trial.  Defendant asserted that a jury trial was not available because Plaintiff had not timely demanded one.  These positions are reflected in the joint scheduling report filed on December 1, 2005, which provides:

> Shoals contends that he is entitled to a jury.  Home Depot contends that Shoals is not entitled to a jury because Shoals did not make a timely demand for one.

(Doc. 10 at 5.).  The scheduling order field by the court on January 26, 2006 inadvertently indicated that "this is a jury trial."  (Doc. 14.)  No party moved to correct the scheduling order.

A district court "in its discretion, may order a jury trial on a motion by a party who has not filed a timely demand for one." *Pac. Fisheries Corp. v. HIH Cas. & General Ins., Ltd.,* 239 F.3d 1000, 1002 (9th Cir. 2001)(citing Fed. R. Civ. Pro. 39(b)).  However, this discretion is narrowly construed and "does not permit a court to grant relief when the failure to make a timely

---

[7] Alternatively, where a party "prior to removal, has made an express demand for trial by jury in accordance with state law, [that party] need not make a demand after removal." California Code of Civil Procedure section 631 requires a party to request a jury trial at the trial setting or case management conference.  Here, however, the case management conference was set for December 23, 2005.  Because the case was removed on September 16, 2005, the state court case management conference was never held.

**16**

demand results from an oversight or inadvertence." *Id*. Accordingly, "an untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown." Numerous cases are in accord. *See, e.g.*, *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1086-87(9th Cir. 2002); *Russ v. Stand. Ins. Co.*, 120 F.3d 988 (9th Cir. 1997); *Kletzelman v. Capistrano Unified Sch. Dist.,* 91 F.3d 68,71 (9th Cir. 1995).

Plaintiff attempts to distinguish the *Pacific Fisheries* line of cases on their facts, arguing that in all of these cases, the party seeking a jury trial did not request a jury until many months after the applicable deadline. Here, Plaintiff apparently informed Defendant of his desire for a Jury trial at their Rule 26(f) conference on October 14, 2005, within one month receiving notice of removal on September 19, 2005. But, Plaintiff, points to <u>no cases</u> that distinguish *Pacific Fisheries* on such grounds.

Plaintiff points to *Mondor v. United States District Court for the Central District of California*, 910 F.2d 585, 587 (9th Cir. 1990), in which the Ninth Circuit considered whether a jury demand <u>contained within Plaintiff's state court complaint</u> satisfied the requirements of Rule 81 upon removal to federal court. The Ninth Circuit reasoned that this <u>pre-removal jury demand</u> did satisfy Rule 81, even though it would not have satisfied state requirements, because that demand is incorporated into the federal record upon removal.

Here, Shoals did not to make any pre-removal jury demand in state court. Plaintiff points to no Ninth Circuit cases departing from the strict rule articulated in *Pacific Fisheries* under such circumstances. *Pacific Fisheries* is the law of this

**17**

circuit, and is binding upon the district court.  *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (articulation of rule by circuit court is law of the circuit, even if not technically necessary to disposition of case).  Plaintiff has presented no evidence that his failure to demand a jury trial was caused by anything other than inadvertence.

Plaintiff also suggested at oral argument that Home Depot may have waived its objection to plaintiff's untimely demand for a jury trial.  Plaintiff was given an opportunity to supplement the record on this issue.  On March 8, 2006, Plaintiff submitted the declaration of Gregory L. Myers, a shareholder in the firm retained to represent Mr. Shoals.  Mr. Myers conceded that Home Depot <u>did not waive</u> its objection and requested.  (Doc. 26.) Accordingly, Plaintiff's waiver argument fails.

Plaintiff's demand for a jury trial must be **DENIED** of right.

### IV.  CONCLUSION

For the reasons set forth above:

(1) Defendant's motion for partial judgment on the pleadings regarding the breach of contract claim is **DENIED**;

(2) Defendant's motion to strike Plaintiff's prayer for attorney's fees is **GRANTED**; and

(3) Plaintiff's motion for a jury trial is **DENIED**.

**SO ORDERED.**

**March 16, 2006.**

_____
           **/S/ Oliver W. Wanger**
**UNITED STATES DISTRICT JUDGE**